OPCO v. AAR I've got Mr. Marshall here for the appellant, Mr. Johnson, Johansson, sorry, and Ms. Lim here for the appellees. But Ms. Lim, in a first for me, is asking for zero time. Okay, very well. Okay, beautiful. Thank you. All right, Mr. Marshall, you've reserved five minutes. Good morning, Your Honors. Judge Newsom, may it please the Court, I am Kevin Marshall for AAR CORP., and I have reserved five minutes. Under the plain text of the Bankruptcy Code, the Bankruptcy Court should have allowed our indemnification claim. Section 502 says the Court shall allow valid contractual claims like ours regardless of whether they are contingent. The exception in Section 502e1 is irrelevant here. It says to disallow a contingent claim for indemnification if the claimant is liable with the debtor to a third-party creditor. The Bankruptcy Court thought it had to disallow such a claim even though a claimant and debtor are not co-liable to a third-party creditor if they were co-liable when the case began on the petition date. But is does not mean was. The Bankruptcy Court's view contradicts the text of Section 502, the statutory context, this Court's analysis in Charter I, the most on-point appellate decision, and all other authority. Can I ask you a question? I think I understand that in this phrase, is liable with the debtor, there are sort of two sub-questions. One is the is question and the other is the liable with the debtor question, right? And the liable with the debtor question, like I'll just, just speaking only for myself, I don't think it's a lay down hand, but I tend to think you're right about the is-ness of this, that this is a current thing and it exists at the time of the hearing. I guess my question is about with respect to the liable with the debtor piece of it, because I guess, and you can tell me why I'm wrong, it does seem to me that Delaware law recognizes the distinction between a covenant not to sue and a release, and that under a covenant not to sue, which is what we have here, liability sort of ends, sort of subliminally. Is that not right? The final point of what you just said is correct as a matter of Delaware law, but it's not right as to how it works in our case. So the statutory language, of course, is liable with, it's not, is there a metaphysical claim? And what the Delaware law says is it draws a distinction between a release and a covenant not to sue, but it also explains why that can matter, and that's relevant in this case. The only reason it matters was not so that Short Brothers could protect their ability to sue the debtor, it's so they could protect their ability to sue us. And one reason we know that is because the debtor has told you in their brief, page 35, they say the settlement eliminated liability. Or here the bankruptcy court herself said that the co-liability issue was settled out. That's page A660. So in some contexts it might matter, but here it does not matter. Another example, we cite a case from the Federal Circuit. Can I ask you a question, though? I'm somewhat confused. Because even though there was a settlement between Short Brothers and the debtor, doesn't the pre-petition claim still continue to exist with regards to your client? Our client still has its pre-petition claim for indemnification against the debtor, and the question is whether that should be allowed, notwithstanding under Section 502e1. But the, I guess my understanding is that there was a debt that Short Brothers, the debtor and your client owed to Short Brothers, correct? Yes. And so Short Brothers and the debtor reached a resolution. That claim still exists as to your client. That was not extinguished. Correct. Which is why we're seeking indemnification from the debtor. So I don't have a chart, but you've got the debtor and you have Short Brothers, and Short Brothers has a suit against the debtor for failing to provide the materials under the procurement contract. At the same time, Short Brothers has a claim against us on the guarantee, and then we have a claim against the debtor on the indemnification. Under Section 502b, our claim should be allowed, even though it's contingent on the result in Northern Ireland, unless 502e1 says to disallow it. And the only reason 502e1 says to disallow it is if there's still liability between Short Brothers and the debtor. And that's what was settled out, Judge Lagoa. That's why the liability, this liability, the bottom of my hypothetical triangle was eliminated between the debtor and Short Brothers, and that means that 502e1 does not apply, and our claim should be allowed under Section 502b. Judge Newsom, you look like you're about to ask a question, but I'll keep going. Keep going.  My wheels will keep spinning. Okay. But on the co-liability, again, page 35 of their joint brief, liability was eliminated. The bankruptcy judge, co-liability was settled out, A660. The bankruptcy court recognized that co-liabilities should have been resolved, and that's exactly why she went to her wrong statutory construction. She thought, well, there's no more co-liability, but I don't think that matters. I'm just going to ignore that fact. I'm going to look back to the petition date, and she did that because she was misreading Section 502b. So there's no genuine issue below as to whether the co-liability continued, and that explains why the bankruptcy court proceeded as it did. And I also point you, Judge Newsom, to the Amanda case from the Federal Circuit that we cite. Somewhat different context, but it shows that a covenant not to sue in some circumstances can even eliminate Article III standing. And finally on that, the debtor here has the burden to show co-liability, and they've not accomplished that. Can I just follow up? Yes. One more thing on the... So it seems like you agree that technically under Delaware law, the covenant not to sue did not completely extinguish the liability. You're arguing as a practical matter in terms of operation? No. Okay. Explain that to me. It did not extinguish the metaphysical overarching claim that Short Brothers has for alleged failure to satisfy the procurement contract. The statutory question under E-1 is, did it eliminate debtor's liability to the Short Brothers? And the answer there is that it did. So Short Brothers has this claim. The only recourse they have on that claim is against us, not against debtor. So another place you could look is in the motion to approve the settlement. What the debtor said is this settlement will resolve all issues. It will resolve all disputes. That's page 885. The terms of the settlement themselves, the covenant not to sue, are on page 157. We quote them in great length in our brief and show how absolute and broad they are. And it's telling that the debtor never even quotes their own covenant not to sue in either of their briefs. Another way to think about this, section 501 says that in a situation where we, seeking indemnification, are liable to a third party, here's Short Brothers. If that third party doesn't file a claim, we can file a claim on their behalf to try to get part of our liability resolved. Short Brothers filed a claim in this bankruptcy and when the settlement was entered into, they withdrew their claim. That itself is telling. But imagine if we would then come in under 501B and say, oh, we'd like to refile a claim on behalf of Short Brothers. That would be absurd. We offered up that hypothetical in our brief and there's no response to it from the debtor. So there's multiple reasons why they can't, did not, and cannot carry their burden to show a continuing co-liability. I think that explains the bankruptcy court's focus on the wrong statutory argument. I think that's what I was saying on the is there still a co-liability issue. So I'll turn back to some of my other points. As to our incurred fees in bankruptcy, the other issue we've raised, I want to make sure I bring that up. The plain text of the bankruptcy code required allowing our contractual claim. It's for fees incurred in the bankruptcy. There too, the bankruptcy court myopically focused on the petition date just as it did in denying our main indemnification claim. And so its error there was of a piece with its error on the first question. In addition to contradicting the view of all four circuit courts to consider the question of the Supreme Court in Travelers and of this court in Bank in Wetzel. Turning back to the main indemnification issue, Judge Newsom, you told me what you preliminarily think. So I'm going to talk about it. I haven't heard from the others. Point out, is liable with 502E1, same language appears in 502D, 501, which I already talked about, 509. It always refers to the present. It doesn't refer to the petition date. We made those arguments and there's no response from the debtor. Similarly, when the bankruptcy code wants you to look at the petition date, it tells you explicitly, and that's not what happened in 502E says, and the bankruptcy court didn't even disagree with us on what 502E1 means. Instead, she looked at 502B, which refers to valuing a claim on the petition date. That was doubly wrong. 502E1 says it applies notwithstanding 502B, and 502B's language is about valuing a claim. It's not about whether you allow it or disallow it. Finally, on the fees incurred in the bankruptcy, I just point the court to its in-bank decision in Wetzel as well as travelers. After travelers, all four circuit courts to consider the question have upheld claims for incurred fees in bankruptcy. We have our incurred fees in bankruptcy. There's no issue of 502E1 as to our incurred fees in the bankruptcy because there's no contingency. They're already incurred and there's also no co-liability. I'll reserve the remainder of my time. Very well. Thank you. Mr. Johanson. May it please the court, my name is Eric Johanson. Together with Angelina Lim, we represent the appellees. Your Honor, there's three issues on appeal. I'll address all three of them. The first issue is the co-liability issue. The co-liability element of Section 502E1 must be evaluated as of the petition date. That's the only logical, holistic interpretation of Section 502 of the Bankruptcy Code. There are two is's in Section 502E of the Bankruptcy Code. There's the first is, which is in the preamble of Section 502E1, and then there's the second is, which is in subsection capital B, which specifically relates to whether the claim remains contingent, whether that claim is contingent. The first is is used generically. There's no mention of any temporal period of time. It's just the generic grammatical use of the word is, which I asked the Internet and the Internet told me it's the second most common word in the English language. The second is is where we need to start this analysis. The second is is specifically pegged to the point in time that the bankruptcy judge is sitting on the bench considering the Section 502E1B claim objection. Section 502E1 sub B commands the court, in the context of asking, is this claim still contingent to look at the present tense? What does that mean the first is refers to? The first is floats. The first is floats back to the generic point in time that bankruptcy courts consider claim allowance, which is the petition date. Section 502B states that the court shall determine and allow a proof of claim on the petition date, as of the petition date. Section 502E is a specific exception to Section 502B. Section 502B starts by saying except as stated and then refers to subsection B. Except as stated in subsection B, which says determine and allow the claim as of the petition date, we go to E and we ask, does anything in E apply? In the preamble of E1, we ask, is there co-liability? We're talking about at the time the case is filed on the petition date. We haven't gotten specific yet. Then, if co-liability is present at that time, the petition date, and if this is a claim for reimbursement or contribution, it's undisputed indemnification fits that bill, then we go to capital B and we ask, is that claim contingent right now? That's what the bankruptcy court did. The bankruptcy court looked at, is this an indemnification claim? Check. It was. Is there co-liability? Yes, there is at the point in time that bankruptcy courts determine and allow claims. Does this capital B exception, which requires disallowance, apply? Yes, it did because it's undisputed AAR did not pay anything. When you just said in describing the specificity within sub B, what you called the specific is in sub B, and you said right now, what's the right now? The point in time the judge, the bankruptcy judge, is sitting on the bench as you are right now adjudicating the claim objection. So then explain to me why it makes sort of coherent sense of everything for sub B to be a right now and the generic sort of preamble, the is and the preamble to be a floating back in time. I don't think I understand that. Wouldn't it make sense for them to cohere? I understand your question. I mean, maybe it's a stupid question, but. Well, if I say something like Michael Jordan is the greatest basketball player, you've heard that before, you think I mean of all time, because people argue zealously that Michael Jordan is the greatest basketball player of all time. If I say Michael Jordan is the greatest basketball player, and then I say of the 1990s, right, now we're all stopping and saying, wait, are you saying someone's better? And that's how I think of E. E is saying, think of the generic point in time that we ask, is Michael Jordan the greatest basketball player? That's of all time, if we're bringing that up. If I want to change the focus and say, not of all time, let's interject LeBron James, I'm going to say, as of right now, as of the 1990s. So I think that's what Congress is doing. They're saying, there are points in time where we have to ask a more specific question. We have to look at a more specific temporal period of time, and that's in the element of contingency. Has something happened? Has something changed where we shouldn't think about the petition date? We should think about the moment in time the judge is on the bench. Because bankruptcy judges don't determine claims as of the moment they're on the bench. They determine them as of the petition date, under Section 502B. If an exception applies, there's specific rules, and that's, right now, sitting on the bench, we have to look at this contingency issue, but we don't change the fundamental focus.  So can I ask you, just for my own purposes, assume for purposes of this question that I disagree with you about the is feature of this. Can you address the liable with the debtor piece of it, and the covenant not to sue, and releases, and the difference between those two things, and whether they should matter or not? And I think this argument we made was referred to as a one-page argument in AAR's brief. It's a very simple argument. A covenant not to sue does not eliminate liability. In this case, liability has not been eliminated. Liability exists to this point in time. In fact, under the compromise, we can call it a settlement for shorthand, but this was a bankruptcy compromise. Under this compromise, AAR, sorry, Strike Debt Short Brothers, received an allowed claim. Remember, Short Brothers filed a proof of claim. That's the primary claim. AAR filed a proof of claim. That was the secondary claim. So there's two claims for the same thing, right? Under this compromise, Short Brothers received an allowed claim. The amount was a little over $300,000. That claim was essentially adjudicated and allowed through the claims allowance process. That's the antithesis of elimination of liability. Short Brothers was determined to be owed money on account of its claim. I know there were some technicalities where the first claim was withdrawn and a new claim was filed, but the fact of the matter is that no liability was ever eliminated entirely. In fact, Short Brothers received an allowed claim. Think about a situation where 502e1b should work, right? That's when you have a primary claim, and that claim is a valid allowed claim, and then you have a secondary claim that would be essentially for indemnification of that same primary claim, right? That's what happened here. There was a primary claim that was determined and allowed through a compromise, and there's a secondary claim. The primary claim has been paid in this case. That's undisputed. Now we have a secondary claim which would effectuate a double payment, and I think that's critical. I don't think we can lose track of that. Your Honor, the other point I would make as to the covenant not to sue, again, is that there's simply been no elimination of liability. One of the points made by AAR in its brief is that in this case there was no discharge. There wasn't. This was a liquidating plan. There's never been a discharge, a judicial discharge, through an actual Chapter 11 bankruptcy discharge of any debt. There's been an allowance, in fact, of Short Brothers' specific claim that it bargained for in this case, and the liability, the metaphysical liability, still exists. So I think that's something the Court could independently, if Your Honors disagree with our Section 502e1b analysis, Your Honors could find. As to the is and the timing, Your Honors certainly could affirm on the basis that the liability was never extinguished. I do want to point out my statement in the brief, our statement in our joint brief, that the liability was eliminated. We were referring to the claim for rejection damages. There was a potential claim in this case that Short Brothers would have had for rejection damages if we had rejected the procurement contract, essentially stopped performing the manufacture of the Airbus part that was critical to the Airbus supply chain. If we had rejected the contract, Short Brothers would have had a claim, essentially, for accelerated contract damages of all damages that would have arisen from, essentially, the cessation of that A220 program. That's the liability, that hypothetical potential rejection damage liability was eliminated. And that was a very good thing, not just for the parties to this case, it was a good thing for AAR that they're not dealing with a scenario where the A220 program came to a halt. We found a solution to that. It's also a good thing for the world because Airbus planes continue to roll off the assembly line. So I think that's another point as to the covenant not to sue and what actually happened the court should bear in mind. I want to pivot to the second issue, the Northern Ireland attorneys' fees. Those fees are essentially claims for indemnification. There's some confusion in the record as to why would the bankruptcy court allow the Northern Ireland fees but disallow the bankruptcy fees. The Northern Ireland fees are essentially, it's a claim for indemnification damages. Like if you slander title and you get sued for it, the party suing you is going to put on their attorney's fees as part of their case in chief. It's not a prevailing party fee you seek at the end based on a contract. I just wanted to clear that up if that was confusing to your honors. But the basis for those fees is the indemnification provision in Northern Ireland. Obviously the debtor is not a party to that Northern Ireland proceeding and the right to indemnification is not advancement in Northern Ireland. The AAR has no right to require the debtor to advance its legal fees and it's not an unconditional obligation to indemnify. There are express limitations which are set forth in Section 8.5C of the Asset Purchase Agreement, a duty to take all reasonable steps necessary to mitigate damages and essentially a prohibition against recovering any amounts for indemnification if you cause the loss. Arguably here, based on the record before your honors, there's a bona fide issue at minimum as to whether AAR mitigated and whether AAR failed to take actions that could have further mitigated its exposure. So the bankruptcy court erred in determining that the mere payment of fees under which there's no advancement right, under which the underlying indemnification contract is not absolute and unconditional, the bankruptcy court erred in finding those claims were not contingent. But wouldn't, I mean, hadn't all of the events that bear on the liability already occurred? There's been no determination of any liability owed by AAR to Short Brothers, so that event hasn't occurred and there's been certainly no determination that vis-a-vis the indemnification contract between AAR and the debtor, AAR fulfilled its duties to mitigate and complied with the limitations necessary to obtain indemnification. All of this could have been avoided if it were an advancement provision. AAR could have included an advancement provision that says irrespective of what happens, advance fees. It didn't do that. So there are contingencies. What will happen in Northern Ireland? That's a big contingency. And then ultimately, vis-a-vis the parties here, were those limitations necessary to obtain indemnification? Maybe I'm just missing something, but I guess I would have thought like determination or not aside, just sort of in the nature of things, whether or not something was mitigated is something like that. I don't know. That happened. That either happened or didn't happen. Like how is that still contingent? I don't think I understand that. There is no present right to payment of an amount where there is still a dispute as to that issue, right? That issue has to be adjudicated. That's our position. I want to briefly address the final issue. I've got two minutes remaining. And we acknowledge the four circuits that have considered this issue. And for me to convince your honors that the bankruptcy judge was right, I think I need to direct you specifically to Section 506 of the Bankruptcy Code. And I need to convince your honors of one very important premise that the four circuits that rule to the contrary all missed. And that is that Section 506 is an express allowance provision. The four circuits that all conclude that attorney's fees can be obtained post-petition by an unsecured creditor believe that 502 is the express allowance provision. And that all Section 506B does is essentially classify or bifurcate a claim that's secured between either secured or unsecured based on the value of the collateral. And that's what 506A does. 506A starts by referring to an allowed claim of a creditor. And then it says it's secured to the extent the value of the collateral exceeds the amount of the claim and it's unsecured to the extent that the value of the collateral does not exceed the claim. Section 506B, and this is the critical part, Section 506B follows Section 506A and it states to the extent an allowed secured claim is secured by property, the value of which is greater than the amount of such claim, there shall be allowed to the holder of such claim interest and any reasonable fees, costs, charges, or expenses. 506A starts with the premise we have an allowed secured claim and then it values it. Section 506B says if you have an allowed secured claim, you are further allowed interest, fees, costs, and expenses. So that's the red pill I need your honors to take, I think, to get there on Section 506B and the attorney's fees. It is an express allowance provision. And if you get to that point, I think you'll see that 502 closes the door to those postpetition fees, but 506B opens it and allows it for a limited class of oversecured creditors. Thank you. Okay, very well. Mr. Marshall, you've got five minutes remaining. I'd like to focus my rebuttal, subject of course to the court's interest, on the question whether there is still a co-liability. But I will briefly say as to the issue in the cross-appeal, Judge Newsom, your instincts are entirely correct. The fundamental error is that my opponents are conflating the question whether there's a contingency, future condition, or whether there's a dispute about something that happened in the past. On co-liability, I have five points. The first is to consider Mr. Johanson's argument and where he began. He began with the question of whether you look at the petition date to determine co-liability or you look to the present as we argue. That emphasis is telling, just as the emphasis of the bankruptcy court below was. There's not a current co-liability. If he really thought there were, he would have started with that. And what you did not hear from Mr. Johanson was any response to my hypothetical about Section 501B. Can we really imagine that AAR can now come in and file a claim on behalf of Shore Brothers after the settlement? It would be ridiculous, perhaps sanctionable. Third point, I point you to page 33 of our opening brief. That's where we quote the covenant not to sue. You can read it for yourself, page A57. The key language that we quote is that Shore Brothers agreed not to bring any action of any nature against debtor before any tribunal, ellipsis, based on any claim arising out of the procurement contract. That eliminated the liability. So maybe this is just my own hangup, but like did it, and this goes to something Judge Kidd asked, I guess, but did it technically eliminate the liability or is it just like a forbearance? It did eliminate the liability. We won't come after you for it unless something happens or some version of that. They agreed not to come after them. They withdrew their claim. They haven't sued them in Shore Brothers. They sued them in Northern Ireland. And my next two points will also, I hope, further address that, Judge Newsom. Page 35 of the joint brief of the debtors. This is the sentence I quoted and that Mr. Johanson was responding to. Isn't under Delaware law a covenant not to sue generally just a forbearance and not like a release? It does not eliminate the claim, but it is a complete defense to liability. It eliminates the liability. I'll jump to my fifth point, which is in our response brief, page 22. We cite two cases there. One is called Applied Materials, Inc., Northern District of California. And the court there, it refers to a covenant not to sue as, and I quote, a way to eliminate the threat of liability. Mr. Johanson hasn't responded to that. Is it possible, though, that that's California law but not Delaware law? I don't think there's any difference. A covenant not to sue eliminated the liability here between Shore Brothers and the debtor. And the only reason it was a covenant not to sue rather than release, and we show this from Delaware law, from their own cases, was to make sure they didn't inadvertently eliminate their claim against us. And that's explicit in the settlement agreement when they moved. But that's where I'm confused because a forbearance usually is not a release. And so it doesn't really extinguish the right to payment. And so that's where I'm sort of having a hang up. It eliminates the right to payment in the sense that it eliminates liability, even if one might imagine that some sort of claim still exists out there in the ether. And as a further part of my fifth point, I'll point you to the same page of our response brief, the Amana refrigeration case from the Federal Circuit, to which we've also not received any response. And that connects a covenant not to sue, doesn't have to be released, eliminates Article III standing. There's no potential injury, in fact, under the very lenient constitutional test for Article III standing. No injury, in fact. And so I wouldn't call it a forbearance. It's a covenant not to sue. It's a very broad one, points you to the language. Also, the applied materials case, the Amana refrigeration case, Section 501B, all of these points, A660 of the bankruptcy court's decision. Co-liability was settled out. You've not heard any response from Mr. Johanson to any of these points in the briefing or this morning in the argument. And I was going to read, point to page 35 of the joint brief, and I'll end with that. This is my third point. Here's what the key sentence says. Having neither rendered substitute performance or paid anything to Short Brothers on account of the damages it failed to mitigate, AAR seeks to reimpose the same liability the debtor and architect eliminated by virtue of the compromise. It points you to that. It points you to their motion to approve the settlement, A85, the covenant not to sue itself, A157, bankruptcy court's own reasoning, A660. Thank you. Thank you both very much. That case is submitted and will be in recess until 9 o'clock tomorrow morning.